UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRUCE W. GLOVER,

    Petitioner,

v.                                        CASE NO. 6:07-cv-660-Orl-35KRS

JAMES R. MCDONOUGH, et al.,

    Respondents.
_____/

## **ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 11). Petitioner filed a reply to the response (Doc. No. 16).

Petitioner alleges eleven claims for relief in his habeas petition: 1) the prosecutor "used improper vouching and improper closing arguments"; 2) counsel labored under a conflict of interest; 3) the information was based on a statement made by the victim that was not "sworn to until after the statement was made"; 4) the voir dire oath was not transcribed; 5) the "weight of the evidence" did not support the conviction; 6) counsel was ineffective by failing to present to the trial court an appellate decision supporting "age as an element" of the crime; 7) Petitioner's motion in limine was "granted, violated, and

ineffectively cured with an instruction"; 8) counsel was ineffective for failing to research "the fact that inconsistent hearsay statements standing alone without other corroborating proof is insufficient to prove guilt beyond a reasonable doubt"; 9) counsel was ineffective for failing to "ask for age as [an] element in [the jury] instructions"; 10) counsel was ineffective for failing "to object to [the] court's decision of disputed element"; and 11) he was illegally sentenced "using a capital crime sentencing statute."

I. **Procedural History**

Petitioner was charged by amended information with two counts of sexual battery (counts one and two), and one count of attempted sexual battery upon a child (count three). A jury trial was held, and several witnesses testified at the trial, including the child victim who described the sexual battery. The trial concluded as follows: Petitioner was found guilty as to count one, not guilty as to count two, and the trial court granted Petitioner's motion for a judgment of acquittal as to count three. The trial court adjudicated Petitioner guilty of sexual battery and sentenced him to life imprisonment.

Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which entered a written opinion affirming the conviction and sentence. The Supreme Court of Florida issued a written opinion affirming the Fifth District Court of Appeal.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, which was denied. Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*.

## II. Legal Standards

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly,

habeas relief is appropriate only if that application was "objectively unreasonable."[1]  *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.     Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2]   *Id*. at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690;

---

[1] Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court.  *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

4

*Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C. Exhaustion and Procedural Default

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
>     (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
>     (B)    (i)    there is an absence of available State corrective

>>process; or

>>(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

>[c]omity concerns dictate that the requirement of exhaustion is not satisfied

6

> by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id*.; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513

7

U.S. at 324).

## III. Analysis

### A. Claim One[3]

Petitioner contends that the prosecutor "used improper vouching and improper closing arguments." Petitioner does not refer to any specific instances of prosecutorial misconduct, and his claim is too vague to support federal habeas relief.

The Court notes, however, that this claim was raised on direct appeal and found to be without merit. On direct appeal, Petitioner described several instances of allegedly improper vouching and argument by the prosecution.

For example, the prosecutor commented during closing argument that the sexual activity "really happened." (Appendix B., Trial of Transcript at 588.) However, this statement was made in response to the defense claim that the victim's testimony was rehearsed and scripted. Similarly, the prosecutor's statements that "these things happened" and "that's what he [the victim] testified to," *Id*. at 591, were made in response to the defense claim that the victim had "made up" the allegations. The prosecutor's statements merely presented argument that, the events as testified to by the victim, actually occurred.

The prosecutor also mentioned in closing argument that "I doubt seriously that [the victim] is capable of making something up like this." *Id*. at 594. Petitioner's counsel

---

[3]All of Petitioner's claims in the instant petition are a condensed version of the same claims raised by him on direct appeal or in his Rule 3.850 motion. As such, his claims are too vague to support federal habeas relief. However, in an abundance of caution, the Court referred to the claims as raised in the state courts in order to more fully decipher the arguments being made by Petitioner.

8

objected and moved for a mistrial. *Id*. The trial court sustained the objection, denied the request for a mistrial, and reminded the jury that it was solely their province to determine credibility. *Id.* Thus, the trial court immediately sustained the objection and informed the jury that it was solely their responsibility to decide the issue of credibility.

Petitioner also mentioned that there was a "Golden Rule" violation[4] when the prosecutor stated "I can't imagine how it was for him, to have to answer those questions" on the witness stand. *Id*. at 588. However, the prosecutor was merely discussing the embarrassment necessarily involved when answering personal and private questions in front of a group of strangers. It was not improper to discuss the discomfort of a witness testifying in front of a jury as to personal matters.

Petitioner also references the videotape that was played to the jury showing the victim's interview with a police detective. At the end of the video, the detective expressed his pleasure with the victim's truthfulness: "I'm very happy that you were honest with me." *Id*. at 510. These videotaped comments were gratuitous, and, in light of the other evidence presented by the State, harmless under the circumstances.

The Court notes that, with regard to federal habeas relief for improper prosecutorial comments, this Court must engage in a two pronged analysis: first, whether the prosecutor's comments were improper; and, second, whether any comments found to be improper were so prejudicial as to render the entire trial fundamentally unfair. *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir. 1987).

---

[4] A "Golden Rule" argument is defined as that which forces "the jury to place themselves in the shoes of the victim." *McDonald v. State*, 743 So.2d 501, 504 (Fla. 1999).

In the present case, the Court has reviewed all of the statements identified by Petitioner and finds that, to the extent that any of the prosecutor's comment were improper, when considered in the context of the entire proceeding, the prosecutor's comments did not render the entire proceeding unfair. *See Gates v. Zant*, 863 F.2d 1492, 1502-03 (11th Cir. 1989) (noting that "several of these arguments were improper . . . . Considering the totality of the circumstances, however, these arguments did not render the sentencing proceeding fundamentally unfair."). Therefore, this claim must be denied.

## B.     Claim Two

Petitioner argues that counsel labored under a conflict of interest. In his Rule 3.850 motion, he stated this his counsel also represented a defendant in another case wherein a sexual battery had been committed in the same apartment complex at or around the time that the crime was committed in this case. Petitioner alleged that the victim in this case copied details from the victim in the other case but that his counsel was unwilling to raise this defense because of his representation of the other defendant.

As found by the trial court, the offense in the other case occurred more than one year *after* the offense occurred in this case and more than one year *after* the victim in this case gave his initial statement to law enforcement regarding the offenses; therefore, it is unlikely that the victim in this case was influenced by information in the similar case. Further, To establish a Sixth Amendment violation, the petitioner must demonstrate both that an actual conflict of interest existed and that such conflict adversely affected the adequacy of his representation. *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987). Petitioner has not identified specific instances that suggest that any such alleged conflict

adversely affected the adequacy of his representation.

## C. Claim Three

Petitioner asserts that the information was based on a statement made by the victim that was not "sworn to until after the statement was made." In his Rule 3.850 motion, he alleged that the information was based on the videotaped statement of the child victim, who was not sworn until the end of the interview.

A state attorney, or his designated assistant, who signs an information charging a felony offense is not required to personally administer the oath to, or personally question and see and hear the testimony of, the material witness or witnesses upon which the charges are based. *State v. Hartung,* 543 So. 2d 236, 237 (Fla. 5th DCA 1989). Here, the assistant state attorney certified in the information that he received testimony under oath from the victim, who was the material witness in this case. The fact that the victim was sworn at the end of the interview did not render the information invalid.

Moreover, pursuant to 28 U.S.C. section 2254, a state prisoner is entitled to federal habeas corpus relief if he is held in custody in violation of the Constitution, laws, or treaties of the United States. This claim involves a state law issue. A mere error of state law does not constitute a denial of due process. *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991). Moreover, this Court expresses no opinion on the state trial court's interpretation of Florida law. A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *See Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983).

## D. Claim Four

11

Petitioner claims that the oath taken by the prospective jurors was not transcribed by the court reporter and that he was denied a complete record on appeal.

The oath in controversy here is the preliminary oath prospective jurors are required to take to ensure that they will give truthful answers to questions regarding their qualifications. *See* Fla. R. Crim. P. 3.300(a). Petitioner has not alleged that the jurors failed to take the oath, and, in many Florida courts, the preliminary oath is administered to the venire in a jury assembly room, before the jurors are questioned about their legal qualifications and before they are divided into smaller groups for questioning in individual cases. *See Lott v. State*, 826 So. 2d 457, 458 (Fla. 1st DCA 2002). Rule 3.300(a) does not require that the preliminary oath be given at a particular time or that it be given more than once. *Id*. Further, Petitioner has not shown how this alleged omission resulted in an unfair trial or appeal or otherwise entitles him to federal habeas relief.

### E.  Claim Five

Petitioner avers that the "weight of the evidence" did not support the conviction. This claim was raised as part of an ineffective assistance of counsel issue in Petitioner's Rule 3.850 motion. Therefore, this claim, as presented here, is procedurally barred as it was never raised in the state courts.

Nevertheless, the standard of review in a federal habeas corpus proceeding for a claim that the petitioner has been convicted on insufficient evidence was articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), and described as follows:

> [W]hether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts

> in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Id.* at 319. Although the facts as they exist in the record may support opposing inferences, a federal habeas court must presume that the jury resolved such conflicts in favor of the prosecution and against the defendant. *See Heath v. Jones*, 863 F.2d 815, 820 (11th Cir. 1989).

Petitioner claims that the victim testified that he (the victim) was on his stomach when the oral sex occurred; that oral sex cannot be performed when the victim is on his stomach; and that the commission of the crime was a physical impossibility. At trial, the victim identified Petitioner as the perpetrator of the sexual battery and described the crime in great detail. The victim specifically indicated that he (the victim) was not lying on his stomach when the oral sex occurred and that he had been confused when he had mentioned being on his stomach in earlier testimony. (Appendix B.,Transcript of Trial at 367-68.)

In light of the evidence presented at trial, the Court concludes that the evidence, when viewed in a light most favorable to the State and after resolving all conflicts in favor of the prosecution, mandates the denial of Petitioner's claim. *See Machin v. Wainwright*, 758 F.2d 1431, 1435 (11th Cir. 1991) (the federal habeas court must presume that conflicting inferences to be drawn from the evidence were resolved by the trier of fact in favor of the prosecution). The Court determines that a rational trier of fact could have found the essential elements of this crime beyond a reasonable doubt.

### F.   Claims Six, Nine, and Ten

Petitioner argues in claim six that counsel was ineffective for failing to present to the

trial court an appellate decision supporting "age as an element" of the crime; in claim nine that counsel was ineffective for failing to "ask for age as [an] element in [the jury] instructions"; and in claim ten that counsel was ineffective for failing "to object to court's decision of disputed element." These claims involve Petitioner's assertion that the trial court failed to instruct the jury that Petitioner's age was an element of the offense of capital sexual battery that must have been proven beyond a reasonable doubt.

The jury instruction as related to count one did not list Petitioner's age as an element of the offense. However, it did provide, in relevant part, as follows:

> Therefore, if you find the Defendant guilty of sexual battery upon a person less than twelve years of age, and you further find at the time of the sexual battery, the Defendant was eighteen years of age or older, you should find him guilty of sexual battery upon a person less than twelve years of age by a person eighteen years of age or older.

(Appendix B., Transcript of Trial at 613.) Consequently, although the jury instruction did not label Petitioner's age as an element of the offense, it did advise the jury that it must find Petitioner to be eighteen or older before it could find Petitioner guilty of sexual battery upon a person less than twelve years of age. Although the instruction did not indicate that the jury must make this determination beyond a reasonable doubt, it was certainly implied, and the jury could not have reasonably found Petitioner to have been under eighteen years of age. The jury viewed the thirty-seven year old Petitioner in the courtroom for several days, and his booking admission, which was admitted into evidence, showed that he was born in 1964.

The state appellate court found that any error in the jury instruction was harmless; and the instruction, as given, was not prejudicial and did not result in a miscarriage of justice. Petitioner has failed to demonstrate that the adjudication of the claim resulted in

14

a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

As to Petitioner's ineffective assistance of counsel claims made in conjunction with this matter, the Court notes that counsel did argue to the trial court that Petitioner's age was an element of the crime. *Id*. at 430, 545. Under the circumstance of this case, there has been no showing that counsel was ineffective with regard to this matter.

## G.     Claim Seven

Petitioner argues that his motion in limine was "granted, violated, and ineffectively cured with an instruction." This claim is procedurally barred because it was not raised with the state courts. Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, this claim is procedurally barred.

## H.     Claim Eight

Petitioner states that counsel was ineffective for failing to research "the fact that [an] inconsistent hearsay statement standing alone without other corroborating proof is insufficient to prove guilt beyond a reasonable doubt." He argues that the victim's "inconsistent hearsay statements standing alone without other corroborating proof [are] insufficient to prove guilt beyond a reasonable doubt."

This claim is without merit. First, during closing argument, Petitioner's counsel thoroughly addressed in detail the inconsistencies in the victim's testimony. Second, the

issue of the child hearsay evidence was addressed in a hearing held prior to trial on the State's notice of intent to present child victim hearsay evidence and in a hearing held after the trial on Petitioner's renewed motion for judgment of acquittal. In both of those hearings, Petitioner's counsel presented cogent arguments against the admission of these statements. Finally, under Florida law, the victim's hearsay statements in this case were sufficient, on their own, to sustain the conviction. *See Williams v. State*, 714 So. 2d 462, 466 n.5 (Fla. 3rd DCA 1997) (finding that a child victim hearsay statement is sufficient, on its own, to sustain a conviction if the statement is determined to carry the sufficient safeguards of reliability). Therefore, counsel did not act unreasonably with regard to this matter, and there has been no showing of prejudice.

## I. **Claim Eleven**

Petitioner contends that he was illegally sentenced "using a capital crime sentencing statute." This Court expresses no opinion on the state trial court's interpretation of Florida law, and it would be inappropriate to conduct an examination of Florida sentencing law. A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *See Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983); *Llamas-Almaguer v. Wainwright*, 666 F.2d 191 (5th Cir. 1982). As stated by the Eleventh Circuit Court of Appeals in *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988), "[i]n the area of state sentencing guidelines in particular, we consistently have held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures." (Emphasis added); see also Nichols v. Estelle, 556 F.2d 1330, 1331 (5th Cir. 1977) ("federal courts do not review a state's

failure to adhere to its own sentencing procedures . . . ."). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is `couched in terms of *equal protection and due process.*'" *Branan*, 861 F.2d at 1508 *(quoting Willeford* v. Estelle, 538 F.2d 1194, 1196-98 (5th Cir. 1976)). Because this claim is based exclusively on state law issues that are merely "couched in terms of equal protection and due process," it must be denied. *Willeford*, 538 F.2d at 1198.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Bruce W. Glover is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly, and is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Orlando, Florida, this 20th day of April 2009.

*[signature]*

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to:
sa 4/20
Counsel of Record
Bruce W. Glover

17